IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERIC TANO TATAW,<br>  a/k/a "the Garri Master,"<br><br>**Defendant.** | Case No.:  **GLR-25-0129** |

**GOVERNMENT'S MEMORANDUM OF LAW REGARDING CLASSIFIED
INFORMATION PROCEDURES ACT ("CIPA") AND MOTION TO APPOINT
CLASSIFIED INFORMATION SECURITY OFFICER**

The United States of America, by and through undersigned counsel, hereby submits this motion and memorandum in support thereof, to appoint a Classified Information Security Officer ("CISO") and to apprise the Court of the applicability of the Classified Information Procedures Act, 18 U.S.C. App. III ("CIPA"), to all matters relating to classified information that may arise in the instant case, both before and during trial.  The disclosure of classified information would raise issues of national security, and CIPA provides the procedural framework by which to address those issues if and when they arise.

Accordingly, the government files this memorandum of law to provide the Court and parties with a description of the procedures mandated by CIPA for protecting classified information in criminal cases, while safeguarding the defendant's constitutional and other discovery rights.  The government further moves the Court, pursuant to 18 U.S.C. App. III § 3, for an Order appointing a CISO to assist the Court and Court personnel in the handling of any classified material pursuant to CIPA and implementing any orders relating to classified information. At the government's request, a CISO has already been identified and is prepared to

1

assist the Court and parties by processing any required security clearances and establishing appropriate secure facilities.

I. PROCEDURAL BACKGROUND

On April 24, 2025, a grand jury for the District of Maryland returned an indictment charging the Defendant, Eric Tano Tataw, a/k/a "the Garri Master," with one count of conspiring to provide material support and resources in furtherance of a conspiracy to murder, maim, and kidnap individuals in Cameroon, in violation of 18 U.S.C. § 2339A, and four counts of communicating interstate threats to injure or kidnap individuals in Cameroon, in violation of 18 U.S.C. § 875(c). ECF 1. Mr. Tataw had an initial appearance on the indictment on April 25, 2025, and was ordered released on home confinement. ECF 7.

Because of the nature of the charges, the government anticipates that issues relating to classified information may arise in connection with discovery in this case.

II. OVERVIEW OF CIPA

The Classified Information Procedures Act ("CIPA") contains a set of procedures by which federal district courts rule on pretrial and trial matters concerning the discovery, admissibility, and use of classified information in criminal cases. CIPA "was designed to balance the defendant's interest in a fair trial and the government's interest in protecting national security information." *United States v. Sterling*, 724 F.3d 482, 515 (4th Cir. 2013); s*ee also United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1363 (11th Cir. 1994); *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996) (describing CIPA's purpose as to "harmonize a defendant's right to obtain and present exculpatory material [at] trial and the government's right to protect classified material in the national interest."). Indeed, CIPA "evidence[s] Congress's intent to protect classified information

2

from unnecessary disclosure at any stage of a criminal trial." *United States v. Apperson*, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006).

The Supreme Court has acknowledged the importance of protecting the nation's security information from disclosure: "The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *CIA v. Sims*, 471 U.S. 159, 175 (1985) (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (per curiam)); *accord Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) ("The [executive branch] has available intelligence services whose reports are not and ought not to be published to the world."). Federal courts have long recognized that "[i]t is not in the national interest for revelation of either the existence or the product of [foreign intelligence operations and information] to extend beyond the narrowest limits compatible with the assurance that no injustice is done to the criminal defendant." *United States v. Lemonakis*, 485 F.2d 941, 963 (D.C. Cir. 1973).

Importantly, CIPA neither creates any new right of discovery, nor expands the rules governing the admissibility of evidence. *See United States v. Smith*, 780 F.2d 1102, 1106 (4th Cir. 1985) (en banc) (noting that "Congress did not intend to alter the existing law governing the admissibility of evidence," and "[n]o new substantive law was created by the enactment of CIPA"); *United States v. Passaro*, 577 F.3d 207, 219 (4th Cir. 2009) ("CIPA does not . . . alter the substantive rules of evidence, including the test for relevance; thus, it also permits the district court to exclude irrelevant, cumulative or corroborative classified evidence."); *United States v. Rosen*, 557 F.3d 192, 195 (4th Cir. 2009) ("CIPA is merely a procedural tool requiring a pretrial court ruling on the admissibility of classified information."); *United States v. Johnson*, 139 F.3d 1359,

1365 (11th Cir. 1998) ("CIPA has no substantive impact on the admissibility or relevance of probative evidence."); *United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) ("CIPA does not create any discovery rights for the defendant."). Rather, CIPA applies preexisting discovery law and privileges and in criminal cases to classified information and restricts discovery of classified information to protect the government's national security interests. *See Smith*, 780 F.2d at 1106; *Baptista-Rodriguez*, 17 F.3d at 1363-64; *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998). Nor does CIPA provide that the admissibility of classified information be governed by anything other than the well-established standards set forth in the Federal Rules of Evidence and applicable privileges. *See Smith*, 780 F.2d at 1106; *Baptista-Rodriguez*, 17 F.3d at 1364.

The Fourth Circuit has stated that "CIPA vests district courts with wide latitude to deal with thorny problems of national security in the context of criminal proceedings" and that "district courts must ultimately balance [the] 'public interest in protecting the information against the individual's right to prepare his defense.'" *United States v. Abu Ali*, 528 F.3d 210, 247 (4th Cir. 2008) (quoting *Smith*, 780 F.2d at 1105)). Several Courts of Appeals, including the Fourth Circuit in *Smith*, adopted the test applied to the "informant's privilege" in *Roviaro v. United States*, 353 U.S. 53, 62 (1957), because of the government's "substantial interest in protecting sensitive sources and methods of gathering information." *Smith*, 780 F.2d at 1108. *See also United States v. El-Mezain*, 664 F.3d 467, 520-21 (5th Cir. 2011) (citing Second, Fourth, and D.C. Circuits, and applying rationale in the Fifth Circuit); *Smith*, 780 F.2d at 1108. As the D.C. Circuit has noted, "[w]hile CIPA creates no new rule of evidence regarding admissibility, the procedures it mandates

4

protect a government privilege in classified information similar to the informant's privilege . . . ." *Id.* at 623.[1]

While the government produces discoverable information to the defense in cases involving classified information, the discovery of classified information must be actually "helpful to the defense of the accused." *United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989) (stating "classified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege, but that the threshold for discovery in this context further requires that a defendant seeking classified information . . . is entitled only to information that is at least 'helpful to the defense of [the] accused'"). The Fourth Circuit has adopted and applied this "relevant and helpful" standard in dealing with the discovery of classified information. *See Abu Ali,* 528 F.3d at 247 (discussing *Roviaro* and framing the CIPA disclosure standard as "relevant and helpful to the defense"); *United States v. Moussaoui,* 382 F.3d 453, 471-72 (4th Cir. 2004) (recognizing adoption of *Roviaro*'s relevant and helpful standard in the CIPA context); *United States v. Fernandez,* 913 F.2d 148, 154 (4th Cir. 1990) (explaining that *"Smith*

---

[1] The D.C. Circuit recognized that the government's privilege concerns not merely the content of any particular conversation, but the privilege often involves the government's ability to collect the information:

> [T]he government's security interest in the conversation lies not so much in the contents of the conversations, as in the time, place, and nature of the government's ability to intercept the conversations at all. Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods. Implicit in the whole concept of an informant-type privilege is the necessity that information-gathering agencies protect from compromise "intelligence sources and methods." The Supreme Court has expressly recognized the legitimacy of this concern in construing the National Security Act of 1947, 61 Stat. 498, 50 U.S.C. § 403(d)(3), in *CIA v. Sims,* 471 U.S. 159, 105 S. Ct. 1881, 85 L. Ed. 2d 173 (1985).

*Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989). Thus, courts understand the need to protect the sources and methods of collecting information as well as the information itself.

requires the admission of classified information" once the defendant has satisfied the *Roviaro* standard); *United States v. Smith,* 780 F.2d 1102, 1107 (4th Cir. 1985) (en banc) (adopting *Roviaro's* relevant and helpful standard in the CIPA context); *see also United States v. Amawi*, 695 F.3d 457, 475 (6th Cir. 2012) (quoting *Yunis* and finding the classified information at issue not "relevant and helpful to the defense"); *United States v. Hanna*, 661 F.3d 271, 295 (6th Cir. 2011) (affirming the trial court's *ex parte* and *in camera* decision that classified information was not actually helpful to the defense); *United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008); *Klimavicius-Viloria*, 144 F.3d at 1261; *United States v. Varca,* 896 F.2d 900, 905 (5th Cir.1990); *United States v. Pringle,* 751 F.2d 419, 427-28 (1st Cir. 1984).

### A.     Section 1—Definitions

For the purpose of CIPA, "classified information" includes "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security. 18 U.S.C. App. III § 1(a). "National security" here is "the national defense and foreign relations of the United States." *Id.* § 1(b); *see also* Executive Order 13526 (defining classified information). CIPA applies equally to classified information in *testimony* and classified information in *documents*. *See United States v. Lee*, 90 F. Supp. 2d 1324, 1326 n.1 (D.N.M. 2000) (citing *United States v. North*, 708 F. Supp. 399, 399-400 (D.D.C. 1988)); *Kasi v. Angelone*, 200 F. Supp. 2d 585, 596-97 (E.D. Va. 2002) (applying CIPA to classified testimony).

### B.     Section 2—Pretrial Conference

CIPA Section 2 provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution." 18 U.S.C. App. 3 at § 2. After a Section 2

motion is filed, the Court "shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by Section 5 of [CIPA], and the initiation of the procedure established by Section 6 of [CIPA]." *Id*.

During the pretrial conference, district courts generally establish or modify the schedule for the case, including the timing of (1) discovery requests by the defense, (2) the defense's pretrial notice to the United States under CIPA Section 5 whereby the defendant identifies an intent to disclose classified information, if any, and explaining the need for such a disclosure, and (3) hearings concerning the use, relevance, and admissibility of classified information pursuant to CIPA Section 6.  *Id*.  In addition, courts consider any matters relating to classified information, or any matters that promote a fair and expeditious trial.  *Id*.  This pretrial conference ordinarily takes place in open court; consequently, no substantive issues concerning the use, relevance, or admissibility of classified information are to be addressed or decided during the CIPA Section 2 pretrial conference.  *See* S. Rep. No. 96-823, at 5-6, *reprinted in* 1980 U.S.C.C.A.N. 4294, 4298-99 (96th Cong. 2d Sess.).  To the extent that the Court wishes to raise substantive issues regarding classified information, or make specific inquiries of the government or the defense regarding issues that could arise in the context of the prosecution or defense theories of the case, the court-appointed CISO can assist the Court with making arrangements for the appropriate handling and/or discussion of classified information in an *ex parte*, *in camera* setting in the courthouse.

To foster open discussions at the pretrial conference, Section 2 provides that no admission made by the defendant, or his attorney, at the pretrial conference may be used against the defendant unless the admission is in writing and signed by both the defendant and his attorney.  18 U.S.C. App. III § 2.

## C. Section 3—Protective Order

CIPA Section 3 mandates that district courts issue a protective order upon motion by the United States to protect against the improper disclosure of any classified information produced by the government to the defense. *Id*. § 3. Section 3 was intended "to codify the well-established practice, based on the inherent authority of federal courts, to issue protective orders," *Pappas*, 94 F.3d at 801, as well as to supplement the Court's authority under Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders in connection with the discovery process. In contrast to Rule 16(d)(1)'s discretionary authority, however, Section 3 "makes it clear that protective orders are to be issued, if requested, whenever the government discloses classified information to a defendant in connection with a prosecution, *e.g.*, Brady and Jencks material." *Id*. Classified information is not produced in discovery in all cases in cases where classified information is at issue. However, the government typically seeks the issuance of a protective order to ensure that appropriate protections are in place in the event that such a production becomes necessary.[2]

Section 3 additionally provides for the appointment of a CISO who will assist the court with the logistics and processes for producing, storing, filing, and handling classified information. The CISO can also assist the Court (including the Court's staff) with determining whether the required individuals hold active security clearances and, if not, with navigating the security clearance application process and providing secure workspaces. The Security Procedures established by the Chief Justice pursuant to CIPA Section 9 provide additional detail regarding the appointment and role of the CISO.

---

[2] Cases involving classified information may also implicate special handling procedures for information that is sensitive from a security standpoint, even if that information is not classified. If such issues arise, the government could seek a specific protective order, or a modification of the general protective order in the case. This is distinct from the protective order contemplated in Section 3 of CIPA, which covers only classified information.

8

### D.     Section 4—Protection of Classified Information During Discovery

CIPA Section 4 authorizes federal district courts to deny, or otherwise restrict, discovery of classified documents and information in the possession, custody, or control of the United States. 18 U.S.C. App. III § 4; *see, e.g.*, *United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998); *Yunis*, 867 F. 2d at 619-625.  Similarly, the Federal Rules of Criminal Procedure provide, in pertinent part, that district courts "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1).  The legislative history of CIPA makes clear that Section 4 was intended to clarify the district court's authority to deny, or restrict, discovery to protect national security.  *See* S. Rep. No. 96-823 at 6, 1980 U.S.C.C.A.N. at 4299-4300; *see also United States v. Moussaoui,* 591 F.3d 263, 281-82 (4th Cir. 2010) ("'[G]ood cause' [under Fed.R. Crim.P. 16(d) includes the protection of information vital to the national security." (citing *United States v. Aref,* 533 F.3d 72, 78 (2d Cir. 2008))); *Smith*, 780 F.2d at 1110 (holding the defendant's right to discovery must be balanced against public's interest in nondisclosure); *United States v. Pringle*, 751 F. 2d 419, 427 (1st Cir. 1985).

Specifically, Section 4 provides that a district court:

> upon a sufficient showing may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove.  The Court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone.

18 U.S.C. App. III § 4.  Like Federal Rule of Criminal Procedure 16(d)(1), Section 4 provides the government may demonstrate the use of alternatives to be warranted through an *in camera*, *ex*

9

*parte* submission to the court. *Id.*; *see United States v. Abu-Jihaad*, 630 F.3d 102, 140 (2d Cir. 2010); *Aref*, 533 F.3d at 81; *Yunis*, 867 F.2d 617, 622-23; *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988); *Pringle*, 751 F.2d 419, 427.

In essence, Section 4 allows the United States to request *ex parte* and *in camera* review of its decisions regarding the discoverability of classified information and, if determined to be discoverable, whether government-proposed summaries, or substitutions, would place the defendant in substantially the same position as the underlying classified information. *See, e.g.*, *Amawi*, 695 F.3d at 472 (stating "every court that has considered this issue has held that CIPA permits *ex parte* hearings."). If so, district courts issue orders approving of the government-proposed summaries and substitutions, which the government then produces to the defense.[3]

For example, the government may request that the Court approve of the government's decision to deny discovery of a classified document in its entirety pursuant to Section 4 because the document is not discoverable under the relevant legal standard. *Amawi*, 695 F.3d at 472-73; *Hanna*, 661 F.3d at 295-96. In the alternative, the government may file a motion under Section 4 to delete specific classified information from a document that otherwise contains discoverable information, or to substitute an unclassified summary, in lieu of the underlying classified document. *See Amawi*, 695 F.3d at 472-473; *Hanna*, 661 F.3d at 295. The government's Section 4 filings, including all attachments, must remain *ex parte* and *in camera*, under seal, and preserved in the record to be made available to the appellate court in the event of an appeal. 18 U.S.C. App. III § 4.

---

[3] The government's discovery review of classified information is consistent with Rule 16, *Brady v. Maryland*, (373 U.S. 83 (1963)), *Giglio v. United States* (405 U.S. 150 (1972)), the Jencks Act (18 U.S.C. § 3500), and other discovery requirements the government follows in all criminal cases. The government will produce in original form, or through an appropriate summary or substitution, any information that is relevant and actually helpful to the material preparation of the defense. *See, e.g.*, *Amawi,* 695 F.3d at 472-473*; Hanna,* 661 F.3d at 295.

10

An individual's access to classified information depends not only on possession of the requisite security clearance, but also on the individual having a "need to know" the specific classified information in question. That is, in addition to receiving a clearance after a favorable determination of eligibility and execution of a non-disclosure agreement, an individual must have a "need to know" the classified information at issue. *See* Exec. Order 13526 § 4.1(a)(3). "Need to know" is defined as "a determination within the executive branch . . . that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function." *Id.* § 6.1(dd). Accordingly, even if a defense attorney holds a security clearance, this "does not mean that [they are] entitled to access the government's classified filings." *United States v. Sedaghaty*, 728 F.3d 885, 909 (9th Cir. 2013); *see also United States v. Dhirane*, 896 F.3d 295, 301 (4th Cir. 2018) (possession of security clearance does not entitle defense counsel to FISA material).

Under CIPA Section 4 and Rule 16(d)(1), the Court must determine whether the information the government seeks to delete is "relevant and helpful" to the defense of the accused. *See Abu Ali,* 528 F.3d at 247-48; *United States v. Moussaoui,* 382 F.3d 453, 472 (4th Cir. 2004); *Fernandez,* 913 F.2d at 154; *Smith,* 780 F.2d at 1107; *see also Yunis,* 867 F.2d at 624-25 (court must consider determine helpful or beneficial character of classified material). To overcome the national security privilege, "the defendant must come forward with something more than speculation as to the usefulness of such disclosure." *Smith,* 780 F.2d at 1107-08. The "district court may order disclosure only when the information is at least essential to the defense … necessary to his defense, and neither merely cumulative nor corroborative ... nor speculative." *Smith,* 780 F.2d at 1110 (internal quotation marks and citations omitted); *Abu Ali,* 528 F.3d at 247-48; *United States v. Wu,* 52 F.3d 323, at *6 (4th Cir. 1995) (unpublished) ("the defendant must show by more than

11

mere speculation or conjecture that the documents are relevant; the classified material must be essential to the defense, and may not be merely cumulative or corroborative." (citing *Smith,* 780 F.2d at 1110)).

Likewise, while a defendant may receive notice when the government initiates CIPA proceedings under Section 4 or 6, there is "no due process right to receive a description of materials in the government's possession that are not discoverable." *Id.* (citing *United States v. Mejia*, 448 F.3d 436, 458 (D.C. Cir. 2006) (noting that, in the context of CIPA, as in other discovery in criminal cases, the defendant is "'not entitled to access to any of the evidence reviewed by the court . . . to assist in his argument' that it should be disclosed") (quoting *United States v. Carson*, 2002 WL 31246900, at *1 (D.C. Cir. Oct. 2, 2002)))). Indeed, a district court considering a motion to withhold classified information "must first determine whether . . . the information at issue is discoverable at all." *Sedaghaty*, 728 F.3d at 904. Only if the information is discoverable must a district court then examine whether the information is also relevant and helpful to the defense. *Id*.

      E.    <u>**Sections 5 and 6—Procedure for Cases Involving Classified Information Possessed by the Defendant**</u>

CIPA Sections 5 and 6 apply when a criminal defendant who already possesses classified information seeks to disclose such information during the course of a trial, or pretrial proceeding.[4] *See, e.g.*, *Baptista-Rodriguez*, 17 F.3d at 1363; *Sarkissian*, 841 F.2d at 965-66; *Collins*, 720 F.2d 1195, 1199-1200 (11th Cir. 1983). Section 5 requires the defendant to provide timely written notice to the court and the government describing any classified information that the defendant reasonably expects to disclose during any pretrial, or trial, proceeding. *See* 18 U.S.C. App. III

---

[4] These sections probably do not apply to the instant prosecution but are included simply for background purposes.

12

§ 5(a). The defendant must provide notice "within the time specified by the court, or where no time is specified, within thirty days prior to trial." *Id*. Although the description of the classified information may be brief, it must be particularized and set forth the specific classified information that the defendant reasonably believes to be necessary for the defense. *See Collins*, 720 F.2d at 1199. This requirement applies to both documentary exhibits and oral testimony, regardless of whether it is anticipated to be brought out on direct or cross-examination. *See United States v. Wilson*, 721 F.2d 967, 975-76 (4th Cir. 1983). The defendant must provide formal notice under Section 5 even if the government knows the defendant may assert a defense involving classified information. *See United States v. Badia*, 827 F.2d 1458, 1465-66 (11th Cir. 1987).

Section 5 specifically prohibits the defendant from disclosing any classified information until after (1) providing notice, (2) allowing the government to seek a determination of the use, relevance, and admissibility of such information under Section 6, and (3) the time for any interlocutory appeal permitted under Section 7 (*infra*) expires. 18 U.S.C. App. III § 5(a). If the defendant fails to provide the requisite pretrial notice, the court may preclude the disclosure of the classified information by the defense and it may prohibit the defendant from examining any witness with respect to such information. *Id*. § 5(b).

After the defendant files notice under CIPA Section 5, the government may request that the court conduct a hearing to make "all determinations concerning the use, relevance or admissibility" of the defense-noticed classified information. 18 U.S.C. App. III § 6(a). Upon such a request, the court *shall* conduct such a hearing, and it must conduct the hearing *in camera* if the Attorney General certifies to the court that a public proceeding may result in the disclosure of classified information. *Id*. Prior to the hearing, the government must first provide the defendant with notice of the classified information that will be at issue. *Id*. § 6(b)(1). If the particular

information previously was not available to the defendant, the government may, with the court's approval, provide a generic description of the material to the defendant. *Id*. The court also may order the government to provide the defendant with "details as to the portion of the indictment or information at issue in the hearing as are needed to give the defendant fair notice to prepare for the hearing." *Id*. § 6(b)(2).

If the government requests a hearing before the proceeding at which the defendant expects to disclose the classified information, the court must issue a ruling before the proceeding commences. *Id*. § 6(a). The district court's ruling must be in writing and set forth the basis for its determination as to each item of classified information. *Id*.

After an *in camera* hearing, if the district court determines that the classified information at issue may not be disclosed during the proceeding, the record of the hearing must be sealed and preserved for use in the event of an appeal. *Id*. § 6(d). If the court finds the classified information useful, relevant, or otherwise admissible, the government may ask for the court to approve of (1) the government-proposed substitution of a statement admitting relevant facts that the specific classified information would tend to prove, or (2) the government-proposed substitution of a summary of the classified information. *Id*. § 6(c)(1).

If the court denies the government's motion for substitution under Section 6(c), CIPA permits the government, by affidavit from the Attorney General, to object to the disclosure of the classified information at issue. *Id*. § 6(e)(1). Upon the government's filing of the Attorney General's affidavit, the court "shall order that the defendant not disclose or cause the disclosure of such information," and it may impose a sanction against the government to compensate for the defendant's inability to present proof of the specific item of classified information. *Id.* § 6(e)(2). Section 6(e)(2) provides a sliding scale of possible sanctions, which include dismissal of specific

counts, finding against the government on an issue to which the classified information related, striking or precluding testimony of a witness, or dismissing the indictment. 18 U.S.C. App. III § 6(e)(2). An order imposing a sanction shall not take effect until the government has the opportunity to appeal the order under Section 7, or thereafter withdraw its objection to the disclosure of the information. *Id*.

Whenever the court rules at a Section 6(a) hearing that classified information is admissible, the court must require the government to provide the defendant with information it expects to use to rebut the classified information, "unless the interests of fairness do not so require." *Id*. § 6(f).

### F. Section 7—Interlocutory Appeal

CIPA Section 7 permits the United States to take an expedited interlocutory appeal to the appellate court if the district court (a) authorizes the disclosure of classified information, (b) imposes sanctions for nondisclosure of classified information, or (c) refuses to issue a protective order sought by the United States to prevent the disclosure of classified information. *Id*. § 7. If an appeal is taken, the court must not commence the trial until the appeal is resolved. *Id*. Such an appeal and decision do not affect the defendant's right to lodge a subsequent appeal upon conviction (if any) of an adverse ruling by the trial court. *Id*. § 7(b).

### G. Section 8—Procedures Governing the Introduction of Classified Information at Trial or at Pretrial Proceeding

CIPA Section 8 prescribes additional protections and procedures governing the introduction of classified information into evidence. *Id*. § 8. Specifically, Section 8(a) provides that classified documents may be admitted into evidence without changing their classification status.

Section 8(b) permits the court to order admission into evidence of only a part of a document when fairness does not require the whole document to be considered by the factfinder. The purpose

15

of this provision is to clarify Federal Rule of Evidence 106, known as the rule of completeness, in order to prevent unnecessary disclosure of classified information. *Id*. at 10-11, 1980 U.S.C.C.A.N. at 4304.

Section 8(c) provides a procedure to address the problem presented at a proceeding when the defendant's counsel asks a question, or embarks on a line of inquiry, that would require the witness to disclose classified information. *Id*. at 11, 1980 U.S.C.C.A.N. at 4304. Specifically, under Section 8(c), the government may object to any question, or line of inquiry, that may require the witness to disclose classified information not previously held to be admissible. 18 U.S.C. App. III § 8(c). Following an objection, the court "shall take such suitable action to determine whether the response is admissible as will safeguard against the compromise of any classified information." *Id*. In effect, this procedure supplements the notice provision under Section 5 and the hearing provision in Section 6(a) to cope with situations that cannot be handled effectively by those sections, such as where the defense does not realize that the answer to a given question will reveal classified information. S. Rep. No. 96-823 at 11, 1980 U.S.C.C.A.N. at 4304-5.

### H.  Section 9—Security Procedures

CIPA Section 9 requires the Chief Justice of the United States, in consultation with specified executive branch officials, to prescribe rules establishing procedures to protect classified information in the custody of federal courts from unauthorized disclosure. 18 U.S.C. App. III § 9(a). Security Procedures established pursuant to this provision are contained in the notes directly following CIPA Section 9. As relevant here, the Security Procedures provide additional detail regarding the appointment of a CISO pursuant to CIPA Section 3 ("In any proceeding in a criminal case . . . in which classified information is within, or is reasonably expected to be within, the custody of the court, the court will designate a 'classified information security officer.' The

Attorney General or the Department of Justice Security Officer will recommend to the court a person qualified to serve as a classified information security officer . . . . The classified information security officer will be responsible to the court for the security of all classified information in the court's custody . . . .").

### III.    REQUEST TO DESIGNATE CISO

Pursuant to Section 2 of the Revised Security Procedures Established Pursuant to Pub. L. 95-456, 94 Stat. 2025, by the Chief Justice of the United States for the Protection of Classified Information ("Security Procedures"), the government requests that the Court designate a CISO in this case.  Matthew W. Mullery is the CISO who supports the region that includes Maryland, and the government requests that the Court designate him as the CISO for this case to perform the duties and responsibilities prescribed for CISOs in the Security Procedures.  The government further requests that the Court designate the following persons as Alternate CISO, to serve in the event Mr. Mullery is unavailable:  Jennifer H. Campbell, Daniel O. Hartenstine, Daniella M. Medel, William S. Noble, Harry J. Rucker, and Winfield S. "Scooter" Slade.

Government counsel conferred with defense counsel, David Walsh-Little, on June 26, 2025, and he represented that he has no objection to this request.

### IV.    CONCLUSION

Due to the nature of the charges, the United States anticipates that issues relating to classified information may arise in connection with the discovery this case.  Accordingly, the United States has provided the foregoing memorandum for the Court and counsel regarding the CIPA procedures, and has moved for the appointment of a CISO.

Respectfully submitted,

                                          Kelly O. Hayes
                                        United States Attorney

By:          /s/
                Christina A. Hoffman
                Assistant United States Attorney

                Michael Dittoe
                Trial Attorney, National Security Division,
                United States Department of Justice

                Chelsea Schinnour
                Trial Attorney,
                Human Rights & Special Prosecutions Section,
                United States Department of Justice